UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORENZO TOWNSEND,

    Plaintiff,

v.

MARGARET OUELLETTE,
*et al.*,

    Defendants.
_____/

Case No. 1:17-cv-935

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Lorenzo Townsend, a state prisoner at a Michigan Department of Corrections (MDOC) facility. This matter is now before the Court on motions for summary judgment based on failure to exhaust filed by defendants John Curley and David M. Leach (ECF No. 19) and Daphne M. Johnson (ECF No. 22).

**I.    Background**

During the initial screening of plaintiff's complaint, the Court dismissed all defendants except for MDOC Special Activities Coordinator (SAC) David M. Leach, MDOC Assistant Deputy Director (ADD) John Curley, and MDOC Administrator Daphne M. Johnson. *See* Opinion (ECF No. 10). Plaintiff states that he is a Buddhist monk. *See* Certificate (ECF No. 1-1, PageID.36). Plaintiff's only claim remaining before the Court is that three MDOC officials, defendants Leach, Curley, and Johnson, refused to permit him to obtain vegan-compliant vitamin B-12 in violation of his rights under the First Amendment and Religious Land Use and

1

Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1(a)(1)-(2). Opinion at PageID.128. Plaintiff seeks compensatory and punitive damages against the three defendants in the amount of $255,000.00 and a court order directing defendants to either provide him with vegan-compliant vitamin B-12 supplements or to allow him to buy the vitamins. Compl. (ECF No. 1, PageID.11).

## II. Defendants' motions for summary judgment

### A. Legal standard for summary judgment

Defendants seek summary judgment on the ground that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support

2

> plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to Exhaust

### 1. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

3

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Discussion

Defendants contend they are entitled to summary judgment for lack of exhaustion. Leach and Curley Brief (ECF No. 20, PageID.154-156); Johnson Brief (ECF No. 23, Page.ID.207-208). In support of their motions, defendants have presented a Step III Grievance Report listing all grievances which plaintiff filed through the Step III appeal and underlying documentation of those grievances which fall within the timeframe alleged in the complaint. *See* Affidavit and

4

Grievance Report (ECF No. 20-3). Defendants point out that none of those grievances address any actions taken by them to deny plaintiff's request for vegan-complaint vitamins. Leach and Curley Brief at PageID.154-155; Johnson Brief at PageID.206.

Defendants also point out that the two grievances attached to plaintiff's complaint relate to medical concerns, not religious concerns. In Grievance LCF-1601-0037-28C ("37") (dated January 11, 2016), plaintiff complained that a physician's assistant (former defendant P.A. Ouellette) was violating the law for impersonating a doctor, that nothing was done to address a scalp irritation, that his B-12 levels were "on the low end" but she "refused to anything about it", that he was denied a CPAP for sleep apnea in favor of medication, and that he was denied a prostate-specific Antigen (PSA) blood test. Grievance 37 (ECF No. 1-1, PageID.16). The grievance was rejected pursuant to Policy Directive 03.02.130. Grievance 37 (ECF No. 20-3, PageID.173). While plaintiff exhausted the rejection of the grievance through Step III, *id.* at PageID.171, this grievance did not name defendants Leach, Curley or Johnson, and did not exhaust his claim that these defendants refused to permit plaintiff to obtain vegan-compliant vitamin B-12 in violation of his rights under the First Amendment and RLUIPA.

In the second grievance attached to his complaint, LCF 2012-03-0274-12d1 ("274") (dated March 2, 2012), plaintiff complained that he was not prescribed a particular shampoo, alleged that his most recent blood draws were inaccurate or tampered with because they indicated a much higher B-12 level than in past years, and complained that he had inadequate shoes for his flat feet. Grievance 274 (ECF No. 1-1, PageID.25-26). The number of this grievance (274) appears to have changed or been mis-transcribed during the appeal, and it appears as

5

Grievance LCF-2012-03-224-12d1 (ECF No. 1-1, PageID.32, 33).[1]  While this grievance appears exhausted, *see* Step III Grievance Report at PageID.170, the grievance does not address the claims alleged in this lawsuit or name defendants Leach, Curley or Johnson.  Finally, defendants point out that plaintiff's request for a declaratory ruling (dated July 5, 2016) did not exhaust his claims. The Court agrees as discussed, *infra*. Based on this record, defendants established that plaintiff failed to exhaust any grievances related to his claims in this lawsuit.

Plaintiff has submitted a number of documents which he contends demonstrate exhaustion without the necessity of filing grievances.[2]  Plaintiff's request for vegan-compliant vitamins commenced when he sent a letter to SAC Leach, in which plaintiff asked if the central store could carry multiple vitamins that did not have animal by-products in them or, in the alternative, if he could order such vitamins from an approved vendor.  Letter to Leach (March 2, 2015) (ECF No. 24-1, PageID.223).  Plaintiff also wanted prayer oil.  *Id*.  Plaintiff acknowledged that he could not order the prayer oil because it was "toxic & flammable."  *Id*.  As an alternative, he provided Leach with a copy of a catalog page from an approved vendor, the "Union Supply Direct Catalog", that had "safe" oil containing neither alcohol nor animal by-products.  *Id*.

On March 10, 2015, Leach replied to plaintiff's request as follows:

> This is in response to your correspondence dated March 2, 2015.  PD 05.03.150 "Religious Beliefs and Practices of Prisoners," Paragraph JJ, requires any requests for approval to possess personal religious property not already authorized by the CFA Deputy Director to be submitted to the Warden or designee.

---

[1] It appears that the numbers of the Step II and Step III appeals attached to the complaint were changed.

[2] Plaintiff filed a sur-reply entitled "Amended reply to defendants' motion for summary judgment" (ECF No. 27). This sur-reply should be stricken because plaintiff did not seek leave to file it as required under W.D. Mich. LCivR 7.2(c).  However, in anticipation that plaintiff will object to this report and refer to the documents attached to the sur-reply, the Court will address those additional documents to the extent they shed light on how this dispute developed.

>  Requests not submitted in accordance with Paragraph JJ of PD 05.03.150 will not be considered.

Leach reply (March 10, 2015) (ECF No. 24-1, PageID.226).

Next, plaintiff sent a letter addressed to non-party LCF Chaplain Tompkins dated March 23, 2015. Letter to Tompkins (ECF No. 27-1, PageID.240-241). In this letter, plaintiff stated that "paragraph JJ of PD 05.03.150 requires any requests for approval to possess personal religious property not already authorized by the CFA Deputy Director to be submitted to the Warden or designee." *Id*. at PageID.240. Plaintiff asked Chaplain Tompkins to have vegan-compliant vitamins available at the central store and to have prayer oil which he needed for his personal meditation. *Id*. Plaintiff sent a nearly identical letter to non-party LCF Warden Hoffner. Letter to Hoffner (ECF No. 27-1, PageID.242-243).

Warden Hoffner responded to plaintiff in a memorandum dated April 15, 2015, regarding "Request for Prayer Oils and Store Item Change" which stated as follows:

> I have reviewed your request for prayer oils and the language that exists in current policy regarding approved religious items. Policy does not allow a Warden to give direct purchase approval for such items. According to PD 05.03.150, Section JJ, your request must be forwarded to the CFA Special Activities Coordinator [defendant Leach] through the proper chain of command. Therefore, I will forward your request to the Assistant Deputy Director [defendant Curley] for review.
>
> Your request for a change of the vitamins that are available from the prisoner store has been sent to the Business Manager for her review.

Hoffner Memo. (April 15, 2015) (ECF No. 27-1, PageID.244).[3] Based on the warden's response, it appears (1) that plaintiff was prohibited from possessing prayer oil because it was not an

---

[3] At that time, Policy Directive 05.03.150 ¶ JJ stated:

> Subject to PD 05.01.142 "Special Alternative Incarceration Program," all prisoners may possess personal

7

approved religious item, and (2) that plaintiff's request for vegan-compliant vitamins would be treated as a request for a new item to be stocked at the prisoner store.

Several days later, plaintiff contacted the business manager (non-party Mrs. Popoff) directly, advising her that he found one vendor "with animal free by-product and it was WalkenHorst's 2012-2013 general catalog" and that he wanted to know the status of his request "so I may order the vitamins." Prisoner Kite (April 27, 2015) (ECF No. 27-1, PageID.246). Mrs. Popoff replied the next day:

> Anything listed on the standardized store list [unintelligible] Policy, is only available through the store. You cannot order these items from another vendor. I will pass this concern on to Central Office.

Popoff Reply (April 28, 2015) (ECF No. 27-1, PageID.246).

Finally, plaintiff provided a copy of a memo from SAC Leach to Warden Hoffner regarding plaintiff's request for approval of to possess and to use prayer oil:

> Prisoner Townsend #201112 submitted a request for approval to possess and use religious prayer oil as part of his religious practice. Townsend identified oils sold by Union Supply and manufactured by Prime Products. Townsend claims the oils are safe because they do not contain alcohol or animal by-products.
>
> Townsend did not explain the religious significance of the oils or how he intended to use them. He only stated that the oil is needed for his personal meditation. The oils are identified by the manufacturer as toxic; they should not come in contact with the eyes or be ingested. Therefore, in the absence of Deputy Director Finco, Assistant Deputy Director Curley has, denied Townsend's request for approval to possess and use this oil.

---

religious property that has not already been authorized by the Deputy Director only with approval of the Deputy Director. Such requests from prisoners must be submitted in writing to the Warden or designee and include a description of the religious item along with an explanation of its significance to the prisoner's designated religion. The Warden or designee shall forward the request and any supporting documents to the CFA Special Activities Coordinator through the appropriate chain of command. The CFA Special Activities Coordinator shall present the material to the CAC for review as needed prior to submission to the Deputy Director.

Policy Directive 05.03.150 ¶ JJ (eff. 01/22/2015).

> It is believed that this decision will not affect Townsend's ability to meditate and practice his designated religion. As a Buddhist he is permitted to possess one strand of mala (meditation) beads and a picture of the Buddha. Both of these items can be used to assist with meditation.

Leach Memo (May 27, 2015) (ECF No. 24-1, PageID.227).

Based on this record, plaintiff claims that he did not have to exhaust a grievance because SAC defendant Leach referenced Policy Directive 05.03.150 in rejecting plaintiff's March 15th request and that plaintiff cannot grieve that contents of a policy. Plaintiff's Response at PageID.214. Plaintiff relies on MDOC Policy Directive 03.02.130, which provides in pertinent part:

> A grievant may not grieve the content of a policy or procedure except as it was specifically applied to the grievant. If a CFA prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum as provided in PD 04.01.105 "Prisoner Housing Unit Representatives/Warden's Forum."

Policy Directive 03.02.130 ¶ F.1. Plaintiff contends that "in lieu of submitting a grievance which would have been rejected" under this policy directive, he "submitted a written letter to Defendants seeking assistance in obtaining his religious items to fully practice his adorned [sic] religious beliefs and concepts." Plaintiff's Response (ECF No. 24, PageID.211).

Plaintiff's claim before the Court is that defendants denied him vegan-compliant vitamins contrary to his religious diet. Despite plaintiff's contention, he is not disputing the content of PD 03.05.150 regarding religious beliefs and practices (e.g., claiming that a particular section of the policy directive is unconstitutional). Rather, to the extent PD 03.05.150 is relevant to his claim, plaintiff is disputing the content of the policy directive "as it was specifically applied" to him, i.e., that he was entitled to receive vegan-compliant vitamins as part of his religious diet. A prisoner's claim that he is being denied a religious meal for a recognized religious group under

9

PD 05.03.150 is a grievable issue which is subject to the exhaustion requirement. *See, e.g., Sebastian v. Leach*, No. 1:18-cv-95, 2019 WL 330478 at *1 (W.D. Mich. Jan. 25, 2019) (request to participate in the prison's religious diet program); *Burley v. Leslie*, No. 1:13-cv-0599, 2014 WL 4660199 at *4-9 (W.D. Mich. Sept. 17, 2014) (request for Kosher meals and access to religious services); *Quatrine v. Henry*, No. 1:12-cv-180, 2012 WL 7707204 at *4-5 (W.D. Mich. Dec. 20, 2012), R&R adopted, 2013 WL 1058675 (March 14, 2013) (removal from Buddhist diet for ordering vegetable/chili soup from the prisoner store). Similarly, plaintiff's claim that defendants denied him vegan-compliant vitamins as part of his religious diet is a grievable issue. "To the extent that plaintiff is asserting claims based on the policy directive as it was specifically applied to him, it is pellucid that he was required to exhaust his claims through the MDOC's grievance process before he filed this lawsuit." *Wayne v. Heyns*, No. 1:13-cv-1308, 2015 WL 1478205 at *8 (W.D. Mich. March 31, 2015).

Plaintiff contends that his letter to SAC Leach was sufficient to put defendants on notice regarding the necessity of his religious oils. Plaintiff's Response (ECF No. 24, PageID.214). This line of argument is irrelevant, because plaintiff's claim regarding religious oil has been dismissed. *See* Opinion at PageID.128; Order (ECF No. 11).

Plaintiff also contends that he commenced the grievance process by filing a "first step grievances on his religious need for vitamin-B supplements and it was denied" and that he was prevented from filing another grievance on the need for the vitamins and oil because it would have been deemed a duplicate grievance and rejected. Plaintiff's Response at PageID.216. However, plaintiff does not identify any such grievance. As discussed, none of the grievances attached to the complaint or identified by defendants name Curley, Leach, or Johnson as the party

grieved, or address a violation of plaintiff's right to receive vegan-compliant vitamins under the First Amendment or RLUIPA.

Next, none of plaintiff's letters to SAC Leach, Chaplain Tomkins, Warden Hoffner or Mrs. Popoff were grievances. To the extent that plaintiff contends that these letters exhausted his claim for vegan-compliant vitamins pursuant to PD 05.03.150 ¶ JJ, this contention should be rejected because plaintiff was not requesting "personal religious property" that had not already been authorized by the Deputy Director. Plaintiff was on a vegan diet. His request for vegan-compliant vitamins to supplement his religious diet was analogous to a request for a particular type of food, not a request for a new type of personal religious property. As discussed, a request related to a religious diet is a grievable issue. While it appears that plaintiff's request for prayer oil may have been appropriate under PD 05.03.150, the dispute over the prayer oil is not part of this lawsuit.

Finally, plaintiff's complaint included a copy of letter to the MDOC Director entitled "Petition For A Declaratory Ruling pursuant to Administrative Rule 791.1115 and P.D. 05-03.150." Pet. Decl. Ruling (ECF No. 1-1, PageID.69-71) (July 5, 2016). In his petition, plaintiff requests a declaratory ruling that defendants failed to properly apply PD 05.03.150 JJ. *Id*. On September 2, 2016, defendant Administrator Daphne Johnson replied to this request, stating that on May 27, 2015, plaintiff's request for religious items was denied. Johnson Letter (Sept. 2, 2016) (ECF No. 1-1, PageID.68). Specifically, "it was determined that the denial of your use of prayer oil does not interfere with your right to practice your religious beliefs or your ability to meditate" and "[y]our request to purchase 'animal free by-product vitamins' is being forwarded to Correctional Facilities Administration for additional review." *Id*. To the extent that plaintiff contends that his July 13, 2016 request for a declaratory ruling under Rule 791.1115 of the

11

Michigan Administrative Code (MAC) exhausted his claim for purposes of the PLRA, this contention is without merit. Filing a request for a declaratory ruling is not a substitute for exhaustion. *See McKaye v. Burnett*, 104 Fed. Appx. 515, 517 (6th Cir. 2004) ("Because filing a request for a declaratory ruling [pursuant to MAC 791.1115] is not part of the MDOC's institutional grievance procedure, such action does not function as the exhaustion of administrative remedies required before the filing of a § 1983 suit.").

In summary, defendants are entitled to summary judgment because plaintiff never exhausted a grievance against them for denial of vegan-compliant vitamins.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motions for summary judgment (ECF Nos. 19 and 22) be **GRANTED** and that this action be **TERMINATED**.

Dated: February 11, 2019         /s/ Ray Kent
                                 United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).